**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION**

OCWEN FINANCIAL CORPORATION,

    Plaintiff,

v.                                                                                          Case No.: _____

U.S. SPECIALTY INSURANCE COMPANY,

    Defendant.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Ocwen Financial Corporation ("Ocwen") sues U.S. Specialty Insurance Company ("US Specialty") and alleges:

**NATURE OF ACTION**

1. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 arising out of US Specialty's refusal to pay for the defense of Ocwen and certain of its officers in the matter styled *Carvelli* v. *Ocwen Financial Corporation, et al.*, Case No. 9:17-cv-80500-RLR in the United States District Court for the Southern District of Florida (the "Carvelli Action") under the subject Directors & Officers and Corporate Liability insurance policy sold to Ocwen.

**PARTIES, JURISDICTION AND VENUE**

2. Ocwen is a Florida corporation engaged in the servicing and origination of mortgage loans with its principal place of business in West Palm Beach, Florida. Ocwen at all material times transacted business in West Palm Beach, Florida.

3. US Specialty is, upon information and belief, a member of Tokio Marine HCC, incorporated under the laws of Texas, with its principal place of business in Houston, Texas.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the parties' respective states of incorporation and principal places of business are diverse, thus establishing a complete diversity of citizenship, and as the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. Venue is proper in this Court as US Specialty regularly conducts its business in this District, the insurance policy described below was issued and delivered to Ocwen in this district, the causes of action accrued in this District, Ocwen's principal place of business in this District, and a substantial part of the events or omissions giving rise to the claims under the subject policy occurred in this District.

## THE US SPECIALTY PRIMARY POLICY

6. US Specialty issued the subject Directors & Officers and Corporate Liability Policy to Ocwen bearing policy number 14-MGU-16-A38670 for the September 20, 2016 to September 20, 2017 policy period (the "Policy").  A copy of the Policy is attached as Exhibit A.

7. The Policy was issued to Ocwen at Ocwen's principal place of business in West Palm Beach, Florida.  *See* Ex. A, Policy at Declarations.

8. Ocwen paid the full premiums on the Policy and satisfied all other conditions necessary to maintain the Policy in full force and effect at all relevant times.

9. The Policy contains a $5,000,000.00 limit of liability, inclusive of "**Defense Costs**"[1] as defined by the Policy. Ex. A, Policy at Declarations.

10. The Policy contains a $0 retention applicable to Insuring Agreement A and a $2,500,000.00 retention applicable to "**Loss** arising from **Claims** alleging the same **Wrongful**

---

[1] Bolded terms connote terms with a specifically-defined meaning under the US Specialty Policy.

259087_1                                               2

**Act** or related **Wrongful Acts**" under Insuring Agreements B(1) and B(2). Ex. A, Policy at Declarations.

11.  The applicable retention (if any), "appl[ies] to **Loss**, including **Defense Costs**, which [Ocwen] is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons**, whether or not such **Loss** is actually paid." "**Defense Costs**" are applied against the retention as incurred. A single retention applies "to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**. Ex. A, Policy at Conditions ¶¶ (A)(2)-(4), (6).

12.  Insuring Agreement A obligates US Specialty to "pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made during the **Policy Period** or **Discovery Period** (if applicable) against the **Insured Persons** for **Wrongful Acts**, except when and to the extent that [Ocwen] has paid such **Loss** to or on behalf of the **Insured Person** as indemnification or advancement." Ex. A, Policy at Insuring Agreement A.

13.  The "**Policy Period**" is September 20, 2016 to September 20, 2017. Ex. A, Policy at Declarations.

14.  Insuring Agreement B obligates US Specialty to "pay to or on behalf of [Ocwen] **Loss** arising from: (1) **Claims** first made during the **Policy Period** or **Discovery Period** (if applicable) against the **Insured Persons** for **Wrongful Acts**, if the [Ocwen] has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement, and/or (2) **Securities Claims** first made during the **Policy Period** or **Discovery Period** (if applicable) against the [Ocwen] for **Wrongful Acts**." Ex. A, Policy at Insuring Agreement B.

15.  The Policy further obligates US Specialty to "pay covered **Defense Costs** on an as-incurred basis." Ex. A, Policy at Conditions ¶ (D).

16. The Policy defines "**Insured**" to mean the **Insured Persons** and [Ocwen]. Ex. A, Policy at Definitions ¶ (E).

17. The Policy defines "**Insured Person**" to mean "any past, present or future director or officer of [Ocwen], including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of **Company** or **Outside Entity**." Ex. A, Policy at Endorsement No. 8.

18. The Policy defines "**Claim**" to mean, in relevant part: "(1) any written demand for monetary or non-monetary relief; (2) any civil proceeding commenced by service of a complaint or similar pleading; (3) any arbitration, mediation or other similar dispute resolution proceeding; … (5) any civil, criminal, administrative or regulatory investigation of an **Insured Person** commenced by his or her receipt of a target letter, Wells Notice or other written notice from an investigating authority (including a subpoena) identifying by name such **Insured Person** as an individual against whom a proceeding may be commenced; or (6) any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document."   Ex. A, Policy at Definitions ¶ (B) and Endorsement No. 9.

19. The Policy defines "**Security Claim**" to mean, in relevant part, "a **Claim** which: (1) is brought by or on behalf of one or more securities holders of [Ocwen] in their capacity as such; (2) arises from the purchase or sale of, offer to purchase or sell, or solicitation of an offer to purchase or sell, any securities, including debt securities, issued by [Ocwen], whether such purchase, sale, offer or solicitation involves a transaction with [Ocwen] or occurs on an open market; or (3) alleges a violation in connection with the registration, purchase, sale, or offer of securities issued by [Ocwen], including violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state 'blue sky' law, any rule or regulation promulgated under any of

the foregoing, and any other provision of federal, state or common law imposing liability in connection with the registration, purchase, sale or offer of securities issued by [Ocwen]." Ex. A, Policy at Endorsement No. 12.

20. The Policy defines "**Loss**" to mean, in relevant part, "**Defense Costs** and any damages, settlements, judgments (including pre- and post-judgment interest) or other amounts that: (1) an **Insured Person** is legally obligated to pay as a result of any claim, or (2) [Ocwen] is legally obligated to pay as a result of any **Securities Claim**, including any of the following, if and to the extent insurable by law: (i) punitive and exemplary damages and the multiplied portion of any multiplied damage award, [and] (ii) fines and penalties assessed against an **Insured** for an otherwise covered violation of any federal, state, local or foreign law." Ex. A, Policy at Endorsement No. 10.

21. The Policy further states that "**Loss**" does not include fines or penalties (other than [fines and penalties assessed against an **Insured** for an otherwise covered violation of any federal, state, local or foreign law]) … wages, or matters which are uninsurable under the law pursuant to which this Policy is construed," but that these exceptions do not "preclude coverage for **Defense Costs** incurred in **Claims** seeking fines, penalties, taxes or amounts uninsurable under applicable law…." Ex. A, Policy at Endorsement No. 10.

22. The Policy defines "**Defense Costs**" to mean, in relevant part, "reasonable fees, costs and expenses … resulting from the investigation, adjustment, defense, or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the **Company**." Ex. A, Policy at Definitions ¶ (D).

23. The Policy defines "**Wrongful Act**" to mean, in relevant part, any: "(1) actual or alleged act, error, misstatement, misleading statement, omission or breach of duty … by an **Insured Person** in his or her capacity as such ... or with respect only to **Securities Claims**, by the **Company**, or (2) matter claimed against an **Insured Person** solely by reason of his or her service in such capacity…." Ex. A, Policy at Definitions ¶ (P).

24. Condition (C) of the Policy states that "[a]ll **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions, or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made." Ex. A, Policy at Conditions ¶ (C).

25. The Policy also contains certain exclusions and limitations on coverage. These exclusions apply "[u]nless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy…." Ex. A, Policy at Exclusions.

26. Condition (D)(2) states that US Specialty "will pay covered **Defense Costs** on an as-incurred basis," but "[i]f it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer." Ex. A, Policy at Conditions ¶ (D)(2).

27. The Policy states that "[f]or purposes of determining the application of [the Policy's] EXCLUSIONS, no **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** who did not have actual knowledge of, or directly participate in the commission of, such **Wrongful Act** and, except for **Wrongful Acts** of the **Company's** Chief Executive Officer and/or Chief Financial Officer, no **Wrongful Act** or any **Insured Person** will be imputed to the **Company**." Ex. A, Policy at Endorsement No. 15.

## THE CARVELLI ACTION

28. On April 21, 2017, Karen A. Carvelli filed a putative federal securities class action complaint in this Court, naming Ocwen, Ronald A. Faris ("Faris") and Michael R. Bourque Jr. ("Bourque") as defendants (the "Carvelli Action"). On August 28, 2017, an amended complaint was filed in the Carvelli Action. A copy of the original and amended complaints in the Carvelli Action are attached as Exhibits B and C, respectively.

29. Prior to the August 28, 2017 amendment, the Plaintiffs in the Carvelli Action were limited to "persons other than defendants who purchased or otherwise acquired Ocwen securities between May 11, 2015 and April 19, 2017." Ex. B at ¶ 1.

30. Following the August 28, 2017 amendment, the Plaintiffs in the Carvelli Action were limited to "persons and entities who purchased or otherwise acquired the common stock of Ocwen Financial Corporation between January 13, 2015 and April 20, 2017" (the "Class Period"). Ex. C at ¶ 1.

31. In brief, the Carvelli Action asserts that Ocwen and the officer-defendants failed to remedy past wrongdoings by Ocwen and certain of its officers, made certain incorrect or incomplete statements during the Class Period, and that the proposed class members purchased stock in reliance on what they believed to be the true state of Ocwen's financial and regulatory status and, as a result, their share values plummeted when the truth (as the plaintiffs allege) became known, causing them damages. *See, e.g.*, Exs. B and C.

32. The Carvelli Action constitutes a **Claim** made against **Insured Persons** during the **Policy Period**, and reported to US Specialty during the **Policy Period**, for alleged **Wrongful Acts** as those terms are defined by the Policy. *See* Exs. A, B and C.

33. The Carvelli Action also constitutes a **Securities Claim** made against the **Company** during the **Policy Period**, and reported to US Specialty during the **Policy Period**, for alleged **Wrongful Acts** as those terms are defined by the Policy. *See* Exs. A, B and C.

34. As alleged in the Carvelli Action Complaints, Faris and Bourque are **Insured Persons** under the Policy, as both Faris and Bourque are alleged to be or have been past and/or present officers of Ocwen. Ex. B at ¶¶ 15, 16; Ex. C at ¶¶ 18, 19.

35. Ocwen, Faris, and Bourque have incurred and will continue to incur **Loss** as defined by the Policy as a result of the Carvelli Action.

36. Ocwen has indemnified Faris and Bourque for **Loss** incurred, and has been and continues to be obligated to indemnify Faris and Bourque for **Loss** incurred, including legal fees, expenses and costs incurred, in relation to the defense of the Carvelli Action.

## TENDER OF THE CARVELLI ACTION TO US SPECIALTY AND US SPECIALTY'S RESPONSE

37. Ocwen promptly tendered the Carvelli Action to US Specialty to pay on behalf of Ocwen **Defense Costs** and, if necessary, indemnify Ocwen for any other **Loss** which Ocwen and/or **Insured Persons** might be legally obligated to pay.

38. By letter dated June 16, 2017, US Specialty denied any defense or indemnity obligation. A copy of US Specialty's June 16, 2017, denial letter is attached as Exhibit D.

39. US Specialty claims that the Carvelli Action is sufficiently "related" to certain **Claims** brought against Ocwen and certain of its directors and officers prior to the **Policy Period** and is therefore deemed to have been first made during an earlier policy period pursuant to, among other things, US Specialty's "Interrelatedness of Claims" provision, which states that **Claims** "alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events" or attributable to "a series of related facts, circumstances,

situations, transactions or events" "will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made." *Id.*

40. While US Specialty also pointed to various other limitations and exclusions in the Policy as a basis for its coverage denial, its conclusion that there is no possibility of coverage is centered on its contention that the Carvelli Action is sufficiently "related" to certain prior acts to foreclose coverage under the September 20, 2016 to September 20, 2017 policy period at issue. *Id.*

41. On November 20, 2017, Ocwen attempted to obtain reconsideration of US Specialty's position including tender of the Amended Complaint in the Carvelli Action. A copy of Ocwen's November 20, 2017 correspondence is attached as Exhibit E.

42. US Specialty affirmed its coverage denial on January 2, 2018. A copy of US Specialty's January 2, 2018 denial letter is attached as Exhibit F.

## GENERAL ALLEGATIONS

43. All conditions precedent to this action have been performed, waived or excused.

44. Ocwen has engaged counsel to represent it in this action, agreeing to pay a reasonable fee for services rendered.

## COUNT I – DECLARATORY RELIEF

45. Ocwen re-alleges paragraphs 1 through 44.

46. Ocwen made timely payment of all premiums and otherwise satisfied all conditions precedent for coverage under the Policy.

47. The Policy is a valid and enforceable contract under the laws of the State of Florida.

48. The Policy requires US Specialty to indemnify Ocwen and its directors and officers, including Faris and Bourque, against third party **Claims** and **Securities Claims** first made during the **Policy Period** against **Insured Persons** and the **Company**, respectively, for **Wrongful Acts**, including the payment of **Defense Costs** to or on behalf of Ocwen and/or its officers and directors as such **Defense Costs** are incurred.

49. US Specialty has refused, without legal excuse, to pay **Loss**, including **Defense Costs**, already and yet to be incurred and/or paid by Ocwen, Faris, and Bourque.

50. As a result, Ocwen has been and will continue to be harmed.

51. No exclusions or coverage limitations relied upon by US Specialty to justify its coverage position apply under the circumstances to relieve US Specialty of pay for the defense of Ocwen, Faris, and Bourque in the Carvelli Action.

52. US Specialty disagrees with Ocwen that: (1) the Carvelli Action is not sufficiently "related" to any claim brought prior to the September 20, 2016 to September 20, 2017 US Specialty Policy Period to render the Carvelli Action a claim made prior to that policy period; (2) (2) no exclusions or coverage limitations in the Policy eliminate US Specialty's duty to pay for the **Defense Costs** paid by Ocwen, on behalf of itself, Faris and/or Bourque, as a result of the Carvelli Action; and (3) as a result, US Specialty must pay for Ocwen, Faris, and Bourque's defense upon exhaustion of any applicable retention under the Policy.

53. There is, upon information and belief, a substantial likelihood that that Ocwen will incur **Loss**, including **Defense Costs**, in connection with the Carvelli Action and other "**Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**" made against Ocwen and/or its officers and directors during the September 20, 2016 to September 20, 2017 policy period in excess of the applicable retention, if any.

54. Accordingly, an actual and justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations under the Policy in relation to the Carvelli Action is necessary and appropriate.

WHEREFORE, Ocwen prays for entry of judgment in Ocwen's favor declaring the rights and interests of the parties in the issues and for the reasons described above, and if necessary to provide full relief, awarding damages to Ocwen to the extent it has paid or agreed to pay any sums which should be borne by US Specialty, interest on such sums as provided by law, legal fees if allowed by law, including Section 627.428 and/or Section 627.9373 of the Florida Statutes, and such other and further relief as may be equitable, just, and proper.

## **TRIAL BY JURY**

Ocwen demands a trial by jury of all issues so triable as a matter of right.

Dated this 22nd day of February, 2018.

Respectfully submitted,

By: */s/R. Hugh Lumpkin*
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Matthew B. Weaver**
Florida Bar No. 042858
mweaver@vpl-law.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@vpl-law.com
**VER PLOEG & LUMPKIN, P.A.**
100 S.E. 2nd Street, 30th Floor
Miami, FL  33131-2158
Phone: 305-577-3996
Fax: 305-577-3558
*Attorneys for Plaintiff*